IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **HALO MINING LIMITED** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No.  4:24-CV-00090-O** |
| | § | |
| **NORTHDATA HOLDINGS, INC., ET AL.,** | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

## OPINION & ORDER

Before the Court are Defendants North Data Holdings, Inc. and Daniel Rafuse's Motion for Summary Judgment (ECF No. 47) and Brief in Support and Appendix (ECF No. 48); Plaintiff Halo Mining Limited's Response (ECF No. 67); Plaintiff's Motion for Summary Judgment and Appendix (ECF No. 50), Brief in Support (ECF No. 51), and Sealed Exhibits (ECF No. 53-1); and North Data Holdings, Inc. and Daniel Rafuse's Response and Brief in Support (ECF No. 65–66). Having reviewed the Parties' briefing and the relevant caselaw, Plaintiff's Motion for Summary Judgment is **GRANTED in part** and **DENIED in part** and Defendants' Motion for Summary Judgment is **GRANTED in part** and **DENIED in part.**

## I.   BACKGROUND

This is a dispute over an agreement to mine cryptocurrency. But an unusual procedural history leads the Court to begin there before turning to the Parties' factual background.

### A.  Procedural History

Plaintiff Halo Mining Limited ("Halo" or "Plaintiff") filed its Complaint on January 26, 2024, against Defendants Monbanc Corporation ("Monbanc"), NorthData Holdings, Inc. ("NorthData"), and Daniel Rafuse ("Rafuse"). In August 2024 and October 2024 Halo served

requests for admission to Monbanc, NorthData, and Rafuse, to which they did not respond. Still without responding, on March 10, 2025, NorthData and Rafuse filed a Motion for Summary Judgment. Subsequently, Halo filed its Motion for Summary Judgment on March 28, 2025, relying largely on the deemed admissions from Defendants' failure to respond. Over a month later, NorthData and Rafuse filed a Motion to Withdraw and Amend Deemed Admissions ("Admissions Motion") (ECF No. 60). The Court referred the Admissions Motion to United States Magistrate Judge Hal Ray who held a hearing on May 15, 2025. The same day, Magistrate Judge Ray issued an order directing NorthData and Rafuse to file a status report listing the admissions they sought to withdraw and for Halo to file a motion for attorney's fees.[1] Halo then filed its Motion for Attorney's Fees (ECF No. 80).

Magistrate Judge Ray subsequently entered an order on June 5, 2025, granting NorthData and Rafuse's Admissions Motion ("Admission Order") conditioned on their paying Halo's Attorney's Fees (ECF No. 83). Several weeks later, the Parties filed a Joint Motion for Continuance, requesting an extension of the Admission Order deadline because they were attempting to resolve their dispute (ECF No. 84), which Magistrate Judge Ray granted (ECF No. 85). Apparently unable to settle their differences, Halo filed its Refiled Motion for Attorney's Fees on August 8, 2025 (ECF No. 86). Due to some excusable confusion, NorthData and Rafuse did not respond.

On December 23, 2025, Magistrate Judge Ray entered a briefing schedule to address Halo's Refiled Motion for Attorney's Fees. After the Parties fully briefed the issue, Magistrate Judge Ray entered an order allowing NorthData and Rafuse to still withdraw their deemed admissions conditioned on their paying Halo's attorney's fees (ECF No. 94). The day before the payment

---

[1] Order 2, May 15, 2025, ECF No. 77.

deadline, NorthData and Rafuse filed a motion seeking an extension to the deadline (ECF No. 95). Magistrate Judge Ray granted a brief extension, extending the payment deadline to March 16, 2026 (ECF No. 98). After the deadline passed, Halo informed the Court that NorthData and Rafuse had not tendered payment to Halo for its attorney's fees. ECF No. 99. As a result, the two sets of requests for admission that Halo sent to NorthData, Rafuse, and Monbanc (which never sought to withdraw its admissions), are deemed admitted. Included among these admissions are the factual allegations contained in every paragraph of Halo's Complaint.[2]

### B. Factual Background[3]

Halo is a United Kingdom-based corporation that owns computer equipment used to solve complex algorithms and thereby generate cryptocurrency in a process commonly known as cryptocurrency mining. Halo places its cryptocurrency mining equipment at third-party hosting locations in the United States and internationally. Monbanc hosts cryptocurrency mining machines and equipment (also referred to as "miners") for customers at data center facilities.[4]

In early 2022, Halo was searching for a hosting facility for its mining equipment. Around this same time, Halo became acquainted with Rafuse, the Chairman and CEO of Monbanc. Rafuse represented to Halo that Monbanc was developing a world-class cryptocurrency mining hosting facility in Tarrant County, Texas (the "Facility") and had secured a fixed-rate power purchase agreement to support the Facility and provide sufficient power for Halo's cryptocurrency mining equipment.

---

[2] Pl.'s App. Supp. Mot. Summ. J. (Requests for Admission), App. 169–175, 185–191, 201–207, ECF No. 50-2.
[3] Because the factual allegations in Halo's Complaint are admitted, the Court's recitation of the facts comes primarily from Halo's Complaint (ECF No. 1), but for clarity is occasionally supplemented by undisputed facts in the Parties' summary judgment briefing.
[4] Defs.' Br. Supp. Mot. Summ. J. 2, ECF No. 48.

On July 29, 2022, Halo and Monbanc entered into a Managed Colocation Agreement ("Hosting Agreement") through which Monbanc agreed to host and maintain Halo's miners for an initial 3-year term. In exchange, Halo agreed to pay a fixed fee of 0.07₵/kWh for electricity and a deposit of $1,383,480.00.[5] The deposit was calculated based on the cost of three-months of Halo's electricity usage and was to be applied to cover Halo's first month and last two months of electricity usage.[6] Among other provisions, the Hosting Agreement provides that all miners are owned by Halo. While the Hosting Agreement does not specify a location, the Parties seemingly agree that the hosting facility was to be the Facility.[7]

On August 3, 2022, Monbanc sent Halo an invoice for $1,497,617.10, representing the deposit of $1,383,480.00 plus 8.25% sales tax. On August 4, 2022, Halo completed a wire to Monbanc for the $1,383,480.00 deposit amount (the "Deposit"). Rather than hold the Deposit and apply it to Halo's first and last two months of electrical consumption, Monbanc immediately began using the Deposit to make transfers to Rafuse, its employees, and for other business expenses.

At some point after tendering the Deposit, Halo shipped Monbanc an unknown number of miners.[8] Monbanc then installed some of these miners to begin generating a cryptocurrency known as bitcoin.[9] Instead of depositing all of the mined bitcoin into Halo's cryptocurrency account as required under the Hosting Agreement, Monbanc began diverting an unknown amount of the bitcoin to other cryptocurrency accounts, including accounts controlled by Rafuse.

Around October 2022, Halo discovered that Monbanc was diverting the mined bitcoin to other accounts. Near this same time, Monbanc notified Halo that its electricity rates were going to

---

[5] Pl.'s App. Supp. Compl. Ex. A (Hosting Agreement), ECF No. 1-2.
[6] *Id.*
[7] Compl. ¶ 7, ECF No. 1; Defs.' Br. Supp. Mot. Summ. J. 3, 5, 8, ECF No. 48.
[8] Defs.' Br. Supp. Mot. Summ. J. 7, ECF No. 48; Pl.'s Br. Supp. Mot. Summ. J. 13, ECF No. 51; Defs.' Resp. 7, ECF No. 66.
[9] Defs.' Br. Supp. Mot. Summ. J. 7–8, ECF No. 48.

increase due to a rate increase from its electrical provider. Halo would then learn that Monbanc never entered into a fixed-rated power purchase agreement as it had represented.

Subsequently, the Parties' business relationship collapsed. While Monbanc returned an unknown number of Halo's miners, it has refused to return 638 of Halo's miners, which are worth over $4 million.

Halo filed its Complaint on January 26, 2024, alleging (1) breach of contract against Monbanc; (2) trespass to personalty; (3) conversion; (4) violation of the Texas Theft Liability Act § 134.001, et seq. of the Texas Civil Practice and Remedies Code; (5) fraud by nondisclosure; and (6) conspiracy against Monbanc, NorthData, and Rafuse. As the Court explained above, Halo filed a motion for summary judgment, as did NorthData and Rafuse. Each side then filed a response, and neither filed a reply. The Motions are now ripe for the Court to consider.

## II.    LEGAL STANDARD

Summary judgment is appropriate only where the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is not "a disfavored procedural shortcut," but rather an "integral part of the Federal Rules as a whole, 'which are designed to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

"[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  The movant must inform the court of the basis of its motion and demonstrate from the record that no genuine dispute as to any material fact exists.  *See Celotex*, 477 U.S. at 323. "The party opposing summary

judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

The court must view the evidence in the light most favorable to the nonmovant. *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013). "Moreover, a court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." *Id.* If, "under the governing law, there can be but one reasonable conclusion as to the verdict," the Court will grant the motion. *Anderson*, 477 U.S. at 250.

## III.   ANALYSIS

Halo moves for "summary judgment as to each of its six causes of action"[10] which include (1) breach of contract against Monbanc; and (2) trespass to personalty; (3) conversion; (4) violation of the Texas Theft Liability Act; (5) fraud by nondisclosure; and (6) conspiracy against Monbanc, NorthData and Rafuse. Conversely, NorthData and Rafuse move for summary judgment seeking dismissal of Halo's claims against them.[11] Before turning to the Parties' arguments, the Court notes two points.

First, in their response to Halo's Motion for Summary Judgment, NorthData and Rafuse dispute Halo's use of deemed admissions as evidence.[12] But "admissions, whether express or by default, are conclusive as to the matters admitted, [and] they cannot be overcome at the summary judgement stage by contradictory affidavit testimony or other evidence in the summary judgment record." *In re Carney*, 258 F.3d 415, 420 (5th Cir. 2001). The Fifth Circuit recognizes the "potential harshness of this result" but has held it "is necessary to insure the orderly disposition of

---

[10] Pl.'s Mot. Summ. J. 1, ECF No. 50; Pl.'s Br. Supp. Mot. Summ. J. 7, ECF No. 51.
[11] *See* Defs.' Mot. Summ. J., ECF No. 47.
[12] Defs.' Br. Supp. Resp. 1, ECF No. 66.

cases." *Id.* at 421. Because Halo's requests for admission have been deemed admitted,[13] the Court relies on them as admissible evidence.[14]

Second, Monbanc has not filed a response to Halo's Motion for Summary Judgment. But because Monbanc, NorthData, and Rafuse have all admitted to being alter egos of each other[15] and Halo seeks to hold them jointly and severally liable,[16] where it is appropriate, the Court evaluates NorthData and Rafuse's arguments opposing Halo's summary judgment as if Monbanc had joined in the opposition. As such, the Court will refer to Monbanc, NorthData, and Rafuse collectively as Defendants below.

### A. Breach of Contract

Halo asserts that Monbanc breached the Hosting Agreement by (1) failing to host Halo's miners at a 95% uptime; (2) failing to provide Halo with VPN access to its miners; (3) failing to treat the Deposit as a deposit that would be applied to Halo's first and last two months of hosting; (4) failing to perform for its obligations for the three year term; and (5) operating Halo's miners for its own benefit and failing to return 638 miners.[17]

"The elements of a breach of contract claim under Texas law are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 415 (5th Cir. 2021) (citation omitted).

---

[13] *See supra* I.A.
[14] Halo's requests for admission are found in Pl.'s App. Supp. Mot. Summ. J. App. 147–207, ECF No. 50-2.
[15] Pl.'s App. Supp. Mot. Summ. J. App. 159, ECF No. 50-2.
[16] Pl.'s Br. Supp. Mot. Summ. J. 18, ECF No. 51.
[17] *Id.* at 20.

The Parties do not dispute that Halo and Monbanc entered into the Hosting Agreement and that Halo performed by tendering the Deposit to Monbanc.[18] There is also no dispute regarding whether Monbanc breached because Monbanc admitted that "[it] breached its agreement with Halo by refusing to bring Halo's cryptocurrency mining equipment operational within a commercially reasonable time and by failing to maintain and host Halo's cryptocurrency mining equipment in accordance with the Hosting Agreement."[19] Likewise, Monbanc admitted that it "did not use any of the funds wired by Plaintiff to Defendant Monbanc . . . to pay for electricity" as required under the Hosting Agreement.[20] Further, Monbanc admitted that it "did not hold the funds wired by Plaintiff to Defendant Monbanc . . . as a deposit," which was required by the Hosting Agreement.[21] And finally, there is no dispute whether Halo suffered damages as a result of Monbanc's breach because Monbanc admitted that "multiple breaches of contract by Monbanc have cause damages to Plaintiff."[22] Therefore, summary judgment is appropriate as to Halo's breach of contract claim against Monbanc.

### B. Tresspass to Personalty

Halo and Defendants both move for summary judgment regarding Halo's trespass to personalty claim. Halo argues that summary judgment is justified because Defendants have admitted that they used Halo's miners to mine bitcoin and then diverted this bitcoin into accounts controlled by Defendants or used it to pay other customers.[23] Defendants contend that summary

---

[18] *See* Compl. ¶¶ 11, 22, ECF No. 1; Defs.' Answer ¶¶ 11, 22, ECF No. 11.
[19] Compl. ¶ 32, ECF No. 1; *see also* Pl.'s App. Supp. Mot. Summ. J. App. 172, ECF No. 50-2.
[20] Pl.'s App. Supp. Mot. Summ. J. App. 158, ECF No. 50-2.
[21] *Id.*
[22] Compl. ¶ 32, ECF No. 1; *see also* Pl.'s App. Supp. Mot. Summ. J. App. 172, ECF No. 50-2.
[23] Pl.'s Br. Supp. Mot. Summ. J. 22, ECF No. 51.

judgment is appropriate in their favor because "trespass to personalty claims to do not apply to intangible property."[24]

"A trespass to personalty is an unlawful injury to, or interference with, possession, with or without the exercise of physical force." *Starkey v. Enri*, No. 14-17-00224-CV, 2018 WL 4136876, at *4 (Tex. App.—Houston [14th Dist.] Aug. 28, 2018, no pet.). "A detention of personalty lawfully obtained, after demand, is a wrongful act constituting a trespass." *Zapata v. Ford Motor Credit Co.*, 615 S.W.2d 198, 201 (Tex. 1981). "Liability does not attach[] unless the wrongful detention is accompanied by actual damage to the property or deprives the owner of its use for a substantial period of time." *Id.* However, trespass to personalty claims generally do not extend to intangible property. *See In re Simons Broad., LP*, No. CIV. W-11-CA-172, 2013 WL 9542015, at *18 (W.D. Tex. Nov. 19, 2013) ("This Court is not aware of any Texas court expanding trespass to personalty claims to trade secrets or other intangible property, and declines to do so today.").

In this case, Defendants have admitted that they "operated Halo's cryptocurrency mining equipment for their own benefit."[25] They have further admitted that such conduct "constitutes trespass to personalty" and that "Defendants' actions in committing trespass to personalty were intentional and malicious."[26] While Defendants' argument is correct that trespass to personalty claims are generally limited to tangible property, Halo's claim is premised on Defendants' misuse of Halo's miners, which are tangible. Thus, the Court finds there is no genuine dispute of material fact regarding Halo's trespass to personalty claim.

---

[24] Defs.' Br. Supp. Mot. Summ. J. 10, ECF No. 48.
[25] Compl. ¶ 24, ECF No. 1; *see also* Pl.'s App. Supp. Mot. Summ. J. App. 171, 187, 203, ECF No. 50-2.
[26] Compl. ¶¶ 36–37, ECF No. 1; *see also* Pl.'s App. Supp. Mot. Summ. J. App. 173, 189, 205, ECF No. 50-2.

### C. Conversion

Plaintiff's complaint brings a cause of action for conversion as to "all of the [bitcoin] generated by Halo's cryptocurrency mining equipment," the "funds that formed the Deposit," and "the cryptocurrency mining equipment" that Defendants have refused to return.[27] Halo now only moves for summary judgment as to the 638 miners that Defendants have not returned,[28] while Defendants seek summary judgment regarding the remaining conversion claims.[29]

Under Texas law, "[c]onversion is the unauthorized and unlawful assumption and exercise of dominion and control over the personal property of another to the exclusion of, or inconsistent with, the owner's rights. *Cypress Creek EMS v. Dolcefino*, 548 S.W.3d 673, 684 (Tex. App.— Houston [1st Dist.] 2018, pet. denied). "The elements of a conversion claim are (1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property." *Id.*

Here, Defendants have admitted that "Plaintiff was the party with the lawful right to possess the [638 miners] and is entitled to immediate possession of the property" and that "Defendants unlawfully and without authorization exercised dominion and control over [Halo's 638 miners] by refusing to return the property upon demand."[30] As such, there is no genuine dispute of material fact regarding Halo's conversion claim for the 638 miners.

---

[27] *Id.* at ¶ 39.
[28] Pl.'s Br. Supp. Mot. Summ. J. 23, ECF No. 51.
[29] Defs.' Br. Supp. Mot. Summ. J. 11–16, ECF No. 48.
[30] Compl. ¶¶ 40–41, ECF No. 1; *see also* Pl.'s App. Supp. Mot. Summ. J. App. 173, 189, 205, ECF No. 50-2.

As for Defendants' summary judgment arguments, Defendants assert that Halo's conversion claims as to the mined bitcoin and the Deposit funds are improper because "money cannot be converted unless it can be identified as a 'specific chattel', as opposed to an indebtedness that can be discharged by a general payment from any source." *Banco Popular, N. Am. v. Kanning*, 638 Fed. App'x 328, 341 (5th Cir. 2016) (citing *Paschal v. Great W. Drilling, Ltd.*, 215 S.W.3d 437, 456 (Tex. App.—Eastland 2006, pet. denied)).[31] And Defendants contend that the mined bitcoin and Deposit funds are not specific chattel here.[32]

While Defendants devote several pages of their summary judgment briefing to this issue,[33] Halo provides no legal argument disputing Defendants' briefing.[34] Seeing no apparent reason to disagree with Defendants, and noting "Texas courts' traditional hostility to claims for conversion of money," the Court finds no genuine dispute with Defendants' arguments that Halo cannot recover the mined bitcoin and the Deposit funds under a conversion theory. *In re TXNB Internal Case*, 483 F.3d 292, 308 (5th Cir. 2007).

### D. Texas Theft Liability Act

Defendants and Halo both move for summary judgment as to Halo's Texas Theft Liability Act ("TTLA") claim.[35] Under the TTLA, "[a] person who commits theft is liable for the damages resulting from the theft." TEX. CIV. PRAC. & REM. CODE § 134.003(a). A theft occurs when a person "unlawfully appropriates property with intent to deprive the owner of [that] property." TEX. PENAL CODE § 31.03(a). To establish a TTLA claim, a plaintiff must demonstrate that "(1) the plaintiff had possessory right to the property in question, (2) the defendant unlawfully appropriated

---

[31] Defs.' Br. Supp. Mot. Summ. J. 12, ECF No. 48.
[32] *See id.* at 12–15.
[33] *See id.* at 11–16.
[34] *See* Pl.'s Resp. 2, ECF No. 67.
[35] Defs.' Br. Supp. Mot. Summ. J. 16–17, ECF No. 48; Pl.'s Br. Supp. Mot. Summ. J. 24–25, ECF No. 51.

the property with intent to deprive the plaintiff of the property, and (3) the plaintiff sustained damages as a result of the theft." *Boston Pizza Restaurants, L.P. v. Bay Three Ltd., Inc.*, No. 3:12-CV-00426-O, 2013 WL 12123896, at *5 (N.D. Tex. July 16, 2013) (O'Connor, J.) (citing *Wellogix, Inc. v. Accenture, LLP*, 788 F. Supp. 2d 523, 542 (S.D. Tex. 2011)).

Here, Defendants have admitted that they "unlawfully appropriated Plaintiff's Deposit and [bitcoin]" and "absconded with [Halo's 638] miners."[36] They have further admitted that

> Defendants, therefore, unlawfully appropriated Plaintiff's property with the intent of depriving Plaintiff of its ownership of that property. Such conduct falls within the description of "theft" under Section 31.03 of the Texas Penal Code. The conduct of Defendants therefore qualifies as "theft," as that term is defined in Section 134.002(2) of the Texas Civil Practice & Remedies Code and entitles Plaintiff to recover damages under the Texas Theft Liability Act.[37]

Because Defendants have admitted to all of the elements of Halo's TTLA claim, the Court finds there is no genuine dispute as to this claim.

### E.  Fraud by Nondisclosure

Halo and Defendants both move for summary judgment on Halo's fraud by nondisclosure claim. As a basis for summary judgment, Halo asserts that Defendants committed fraud by representing that Monbanc owned the Facility when it did not.[38] But as Defendants rightly point out, this is the first time that Halo has raised this claim and therefore is not properly before the Court.[39]

"As a general rule, new claims cannot be raised in motions for summary judgment." *Sun River Energy, Inc. v. McMillan*, No. 3:13-CV-2456-D, 2014 WL 4771852, at *10 (N.D. Tex. Sept. 25, 2014) (Fitzwater, J.) (quoting *Buchanan v. McCool*, 2006 WL 3044446, at *12 (E.D.Tex.

---

[36] Compl. ¶ 46, ECF No. 1; *see also* Pl.'s App. Supp. Mot. Summ. J. App. 174, 190, 206, ECF No. 50-2.
[37] Compl. ¶ 47, ECF No. 1; *see also* Pl.'s App. Supp. Mot. Summ. J. App. 174, 190, 206, ECF No. 50-2.
[38] Pl.'s Br. Supp. Mot. Summ. J. 25, ECF No. 51.
[39] Defs.' Resp. 2, ECF No. 66.

Oct.25, 2006)). Halo's Complaint consists of only two conclusory sentences regarding Halo's fraud by nondisclosure claim. The first is, "[t]he conduct of Defendants described above constitutes fraud by non-disclosure and entitles Plaintiff to recover its damages arising out of or related to such fraud such that the Court cannot discern the basis for Halo's fraud claim."[40] The second is, "[s]uch fraud by non-disclosure was committed intentionally and maliciously and entitles Plaintiffs to recover exemplary damages."[41] While Defendants have admitted to these two sentences, nowhere in Halo's Complaint does it raise a cognizable fraud claim based on Defendants misrepresenting ownership of the Facility. For this reason, the Court **DENIES** summary judgment for Halo as to its fraud by nondisclosure claim.

As a basis for summary judgment in their favor, Defendants raise a wide range of arguments, which, rather than proving there is no genuine dispute of material fact, evinces that there are several material factual disputes as to this claim.[42] Accordingly, Defendants cannot prevail on summary judgment as to this claim.

### F. Conspiracy

Defendants and Halo both move for summary judgment regarding Halo's conspiracy claim. In its Motion for Summary Judgment and its brief in support, Halo asserts that it is moving for summary judgment on all six of its causes of action—which includes civil conspiracy. Confusingly, however, Halo advances an alter ego argument rather than a civil conspiracy claim in its brief in support of its motion for summary judgment.[43] But under Texas law, "alter ego is not a separate cause of action but a remedy to enforce a substantive right." *U.S. Bank Nat. Ass'n v. Verizon Communications, Inc.*, 761 F.3d 409, 442 (5th Cir. 2014), as revised (Sept. 2, 2014);

---

[40] Compl. ¶ 50, ECF No. 1.
[41] Compl. ¶ 51, ECF No. 1.
[42] *See* Defs.' Mot Summ. J. 18–21, ECF No. 48.
[43] *See* Pl.'s Br. Supp. Mot. Summ. J. 27, ECF No. 51.

*see also Matthews Const. Co., Inc. v. Rosen*, 796 S.W.2d 692, 693 n.1 (Tex. 1990) (explaining that "the mere fact that a corporation operates as an alter ego does not give rise to a separate and independent cause of action"). Adding to the confusion, Defendants' response argues against awarding Halo summary judgment as to civil conspiracy without addressing Halo's alter ego arguments.[44] Because Halo asserts it is moving for summary judgment on its conspiracy claim and Defendants response advances conspiracy arguments, the Court construes Halo's alter ego argument as moving for summary judgment as to its civil conspiracy claim.

"To establish a claim for civil conspiracy in Texas, a plaintiff must show: (1) two or more persons; (2) an objective to be accomplished; (3) a meeting of the minds on the objective; (4) one or more unlawful, overt acts; and (5) proximate damages." *Duzich v. Advantage Fin. Corp.*, 395 F.3d 527, 530 (5th Cir. 2004). However, the Texas Supreme Court has held that "civil conspiracy is not an independent tort." *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019). Rather, "it depends on some underlying tort or other illegal act." *WickFire, L.L.C. v. Laura Woodruff; TriMax Media, L.L.C.*, 989 F.3d 343, 358 (5th Cir. 2021), as revised (Mar. 2, 2021).

Here, it is unclear which tort Halo ties its civil conspiracy claim to. But Halo's Complaint incorporates its conversion cause of action into its conspiracy cause of action.[45] And because the Court has determined that summary judgment in Halo's favor is appropriate for its conversion claim and "[c]onversion is a tort claim for theft," the Court evaluates Halo's conspiracy claim in relation to its conversion claim. *Bass Drilling, Inc. v. SE Energy, LLC.*, No. 9:09-CV-187-TH, 2009 WL 10677351, at *3 (E.D. Tex. Dec. 2, 2009).

---

[44] Defs.' Resp. 16, ECF No. 66.
[45] *See* Compl. ¶ 52, ECF No. 1.

Defendants only argument as to why summary judgment is not warranted for Halo's conspiracy claim is that "Plaintiff lacks any evidence whatsoever to prove conspiracy, and even if Plaintiff had provided evidence, Defendants raised a genuine issue of material fact with their summary judgment evidence, which unequivocally shows that Defendants did nothing wrong."[46] But Defendants have admitted that they "acted in concert with one another, or aided and abetted one another, or assisted each other in a manner sufficient to impose vicarious liability on all of them for the actions of any, and to hold them jointly and severally liable for all damages incurred."[47] Likewise, the Court has found Defendants liable for conversion, so they did do something wrong. Accordingly, because Defendants have admitted to the elements of civil conspiracy, the Court finds there is no genuine dispute of material fact as to this claim.

**G. Damages**

With liability established, the Court turns to damages. Halo seeks damages for (1) the Deposit paid to Defendants in the amount of $1,383,480; (2) lost earnings in the amount of $2,693,920.05 from its miners that Defendants misused; and (3) the 638 miners Defendants have not returned, valued at $4,632,843.30.[48]

In assessing damages, the Court applies the same summary judgment standard. *See NEWCO Enterprises, LLC v. Super Heaters N. Dakota, LLC*, No. 7:14-CV-00087-O, 2023 WL 4029660, at *2 (N.D. Tex. June 15, 2023) (O'Connor, J.).

      i.        <u>Breach of Contract</u>

The Court has already found that Monbanc breached the Hosting Agreement and that it did not use any of the Deposit as agreed under the Hosting Agreement. "Ordinarily, when a court

---

[46] Defs.' Resp. 17, ECF No. 66.
[47] Compl. ¶ 53, ECF No. 1; *see also* Pl.'s App. Supp. Mot. Summ. J. App. 175, 191, 207, ECF No. 50-2.
[48] Pl.'s Br. Supp. Mot. Summ. J. 6, ECF No. 51.

concludes that there has been a breach of contract, it enforces the broken promise by protecting the expectation that the injured party had when he made the contract." *Hoffman v. L & M Arts*, 838 F.3d 568, 584 (5th Cir. 2016). Accordingly, the Court finds that Halo is entitled to recover its full Deposit paid under the Hosting Agreement—$1,383,480.00.

ii.      Trespass to Personalty

The Court previously found Defendants liable to for trespass to personalty. Halo seeks damages totaling $2,693,920.05 for this claim.[49] Halo apparently arrives at this figure by calculating the difference between "Halo's miner's performance in the time from September 24, 2022 through December 31, 2022 when they were either under Monbanc's control . . . versus the performance of Halo's miners throughout 2023" when they were not under Monbanc's control.[50]

"[T]he measure of damages in a trespass case is the sum necessary to make the victim whole, no more, no less." *In re Kelly*, 643 Fed. Appx. 400, 402 (5th Cir. 2016) (quoting *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 921 (Tex.2013). While Halo explains how it arrived at its calculation, Halo does not appear to provide the Court with the number of miners running during each time period. As such, the Court is not provided with a basis to determine if the damages calculation is an equal comparison. Therefore, because the Court cannot determine that Halo's purported damages would only make it whole and not be a "windfall and place them in a better financial condition than they would have occupied had the trespasses not occurred," the Court **DENIES** Halo's motion for summary judgment damages as to this claim. *In re Kelly*, 643 Fed. App'x at 402.

---

[49] *Id.* at 22–23.
[50] *Id.* at 18; Pl.'s App. Supp. Mot. Summ. J. App. 66–68, ECF No. 50-2.

### iii.    Conversion

The Court has already determined that Defendants are liable for conversion of Halo's 638 miners. As compensation for this conversion, Halo seeks damages totaling $4,632,843.30. To substantiate this calculation, Halo attaches a declaration from its "Director and sole shareholder," David James Rogers, who explains that "[b]etween February and June 2021, I purchased 9,149 cryptocurrency miners across six separate invoices for a total purchase price of sixty-six million four hundred thirty-five thousand five hundred fifty United States Dollars ($66,435,550 USD) and an average price of $7,261.51 per miner."[51] He further declares and attaches "a true and correct copy of each of the invoices."[52]

"Generally, the measure of damages for conversion is the fair market value of the property at the time and place of the conversion." *Cypress Creek EMS v. Dolcefino*, 548 S.W.3d 673, 685 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). Multiplying the 638 miners by $7,261.51 per miner yields a total of $4,632,843.38. While the Court's calculation is $0.08 different from Halo's, the Court finds that Halo has provided sufficient evidence to establish that the fair market value of the miners at the time of conversion was $4,632,843.30.[53] Accordingly, the Court finds that Halo is entitled to recover $4,632,843.30 for its conversion claim.

### iv.    Joint and Several Liability

Halo moves for the Court to hold Defendants "jointly and severally liable for all damages incurred."[54] "Under Texas law, proof of civil conspiracy imposes joint and several liability on all co-conspirators for any actual damages resulting from acts in furtherance of the conspiracy."

---

[51] Pl.'s App. Supp. Mot. Summ. J. App. 2, ECF No. 50-2.

[52] *Id.* at App. 2, 10–15.

[53] The Court also notes that Defendants have admitted that "638 of Halo's cryptocurrency miners [are] worth in excess of $4 million dollars." Compl. ¶ 28, ECF No.1; Pl.'s App. Supp. Mot. Summ. J. App. 172, 188, 204, ECF No. 50-2.

[54] Pl.'s Br. Supp. Mot. Summ. J. 18, ECF No. 51.

*Intern. Paper Co. v. Frame*, 67 Fed. App'x 251, at *5 (5th Cir. 2003) (citation modified); *see also In re Enron Corp. Sec., Derivative & ERISA Litig.*, 623 F. Supp. 2d 798, 813 (S.D. Tex. 2009) ("A finding of civil conspiracy imposes joint and several liability on all conspirators for actual damages resulting from acts in furtherance of the conspiracy.") (citing *Carroll v. Timmers Chevrolet,* 592 S.W.2d 922, 925 (Tex. 1979)). Because the Court has found Defendants liable for civil conspiracy, the Court finds that imposing joint and several liability on Defendants is warranted. Accordingly, Defendants Monbanc Corporation, NorthData Holdings, Inc., and Daniel Rafuse are all jointly and severally liable for the damages the Court has awarded Halo.

## IV.    CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment (ECF No. 50) is **GRANTED in part** as to its claims for (1) breach of contract; (2) trespass to personalty; (3) conversion, but only as to the 638 miners; (4) Texas Theft Liability Act; and (5) conspiracy and **DENIED** in part as to its claims for (1) conversion as to the mined bitcoin and the Deposit funds, and (2) fraud by nondisclosure. Defendants' Motion for Summary Judgment (ECF No. 47) is **DENIED** except as to its motion for summary judgment regarding Halo's conversion as to the mined bitcoin and the Deposit funds, which is **GRANTED**.

The Court awards Plaintiff Halo Mining Limited damages of $1,383,480.00 for its breach of contract claim and $4,632,843.30 for its conversion claim, for which Defendants Monbanc Corporation, NorthData Holdings, Inc., and Daniel Rafuse are all jointly and severally liable.

As to Plaintiff's fraud by nondisclosure claim and any other remaining issues, the Court **ORDERS** the Parties to file by no later than **April 3, 2026** either (1) a joint status report detailing the remaining issues and a proposed course of action for resolving these issues, or (2) a joint notice of dismissal as to any remaining claims under Federal Rule of Civil Procedure 41.

**SO ORDERED** on this **24th day** of **March, 2026.**


_____
Reed O'Connor
**CHIEF UNITED STATES DISTRICT JUDGE**